IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |
|---|---|
| ANTHONY ZACHERY SR.,<br><br>          Petitioner,<br><br>vs.<br><br>WARDEN CHARMAINE BRACY,<br><br>          Respondent. | CASE NO. 4:22-cv-1008-CEF<br><br>DISTRICT JUDGE<br>Charles Esque Fleming<br><br>MAGISTRATE JUDGE<br>James E. Grimes Jr.<br><br>**REPORT AND**<br>**RECOMMENDATION** |

Anthony Zachery Sr. filed a Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus. Doc. 1. Zachery is currently in custody at the Trumbull Correctional Institution serving a sentence of five to seven-and-a-half years' imprisonment imposed by the Trumball County Court of Common Pleas in *State v. Zachery*, Case No. 18-CR-412. The Court referred this matter to a Magistrate Judge under Local Rule 72.2 for the preparation of a Report and Recommendation. For the following reasons, I recommend that the Court dismiss Zachery's petition.

### Summary of underlying facts

In habeas corpus proceedings brought under 28 U.S.C. § 2254, factual determinations made by state courts are presumed correct. 28 U.S.C. § 2254(e)(1). "This presumption also applies to the factual findings that [a] state appellate court makes on its review of the state trial record." *Johnson v. Bell,*

525 F.3d 466, 474 (6th Cir. 2008). The petitioner has the burden of rebutting

that presumption by clear and convincing evidence. *Id.*

The Ohio Court of Appeals for the Eleventh Appellate District

summarized the facts underlying Zachery's conviction as follows:

> {¶2} On June 10, 2019, Zachery was indicted by the Trumbull County Grand Jury for the following: Domestic Violence, a felony of the third degree, in violation of R.C. 2919.25(A) and (D)(1) and (4); Felonious Assault, a felony of the second degree, in violation of R.C. 2903.11(A)(2) and (D)(1)(a); and Resisting Arrest, a misdemeanor of the second degree, in violation of R.C. 2921.33(A) and (D).
>
> {¶3} A jury trial was held on September 16 and 17, 2019. The following pertinent testimony was presented:
>
> {¶4} Christina Oller, Zachery's girlfriend for three and a half years, testified that the two lived together and had an intimate relationship. On April 30, 2019, Oller had just returned to their home after being released from the "psych ward" following an incident in which she had been raped and became suicidal. On April 30, Zachery and Oller argued about whether she was being truthful about the rape. According to Oller, he yanked her by her hair and dragged her through a few rooms, ripping her shirt and pants. He said he wanted to "show [her] what rape really looks like." He punched or slapped her in the chest, stomach, and head. In the kitchen, he put a knife up to her throat and had her pinned on the floor. When he put the knife down, she ran to the bathroom where Zachery busted the door open. He took her to the kitchen and made her answer questions about the rape, continuing to hit her, placing a chair on her, and lunging at her.
>
> {¶5} According to Oller, following the incident, Zachery purchased alcohol, which he made her drink and had her text message people to obtain crack. During that time, she messaged a friend, Catherine

Morton, stating: "Call the cops now. He beat me to death" and "He hurt me and I'm scared he's going to kill me." When the police arrived, she hid pursuant to Zachery's instruction but then peeked out and waved until the police saw her. She refused to go to the hospital but suffered bruises to her face and breast and had black eyes. After Zachery was arrested, she moved into a battered women's shelter called Someplace Safe. She testified that he had been physical with her in the past. Oller testified that she sent Zachery a message in jail saying she was not telling the police anything happened and that she wanted to know he was ok. She explained she sent this message because she still loved him.

{¶6} Catherine Morton received the aforementioned text messages from Oller on April 30 around 7:30 p.m. and called the police. She did not know the address but conveyed to them the general vicinity of the house. She subsequently received a call from Oller who said the police were at her house. Oller was whispering and said she was hiding.

{¶7} Officer Justin Fenstermaker of the Warren City Police Department was dispatched to the incident following the 911 call. He testified that, from the physical description provided of the house and its location across from a Rite Aid on Parkman Road, as well as prior calls to that location, he responded to Zachery's residence. He also knew Oller to be associated with that location. He indicated past calls had related to domestic violence as well as "disturbances." He also testified that he was familiar with Zachery, had personally arrested Zachery for domestic violence in that residence with Oller as the victim and that in his past dealing with Zachery, he had resisted arrest.

{¶8} Upon arriving at the home, Zachery told Fenstermaker his girlfriend was not there. Fenstermaker saw Oller inside the house wave and then return back to where he believed she had been hiding, which he took as a sign she was in danger. He informed Zachery he was being detained and

3

there was a struggle between Zachery, Fenstermaker, and another officer, Joseph Wilson. Zachery did not listen to commands or put his hands behind his back. A dash cam video was played which showed discussion between the two officers and Zachery. Fenstermaker stated that he saw "her" inside. The officers grabbed Zachery's arm, he struggled, and they advised he was being "detained." He continued to pull away from them for a period of time until they stated they would use a taser.

{¶9} After Zachery was handcuffed, Fenstermaker went inside and observed bruises on Oller's face and redness and bruises on her chest and neck area, as well as a cut on her neck. She was crying and breathing fast and heavy. He observed the door to the bathroom was broken. He did not recall seeing any marks on Zachery's hands and did not recover a knife from the residence. After speaking with Oller, he exited the residence and took Zachery from the front porch to a police car.

{¶10} The State presented judgment entries of prior convictions and questioned Fenstermaker about these entries. Zachery's counsel did not object to the admission of the entries except to challenge whether the State had demonstrated they pertained to his client. Fenstermaker confirmed that Zachery had a Domestic Violence conviction in 2000 and an accompanying charge for Violating a Protection Order. Fenstermaker confirmed that there was a second Domestic Violence conviction in 2001 accompanied by a charge for resisting arrest. The judgment entries also showed a companion case in which Zachery was convicted of Endangering Children. Fenstermaker confirmed entries showing Domestic Violence convictions in 2007, 2012, two in 2015, and in 2018. Fenstermaker testified that the victim in 2018, as indicated by the complaint attached to the judgment of conviction, was Oller. Fenstermaker testified that the paperwork showed Zachery's name, address and identifying information that enabled him to know it related to the present defendant.

4

{¶11} Officer Wilson backed up Fenstermaker on the April 30 call. While speaking with Zachery, who said his girlfriend was not there, Fenstermaker stated that he saw Oller "around the corner." They then told Zachery he was being detained, and he "fought us. He backed us into the screen door, and I believe the window might have popped out from us slamming into it." The two officers discussed using a taser, Wilson drew his taser and Zachery stopped fighting, sat down and was handcuffed. When Wilson subsequently observed Oller, he believed she had been assaulted and "it was pretty bad." He advised Oller to go to the hospital for x-rays because her face was so swollen he believed she may have a fracture. Oller said she was afraid of retaliation and did not want Zachery charged. The State inquired: "Based on your training, education, and experience, did Mr. Zachery resist his arrest on that night?" to which Wilson responded affirmatively.

{¶12} Linda Baer, a program manager at Someplace Safe which provides services to domestic violence victims and emergency shelter, testified that Oller came to stay on May 4, 2019, and had two black eyes and her breast had very bad bruising. According to Baer, Oller had been there about six times over the past two years.

{¶13} Zachery testified that on April 30, he was speaking with Oller about her stealing his mother's identity and inconsistencies in her statement about being raped. He testified that she pulled her own hair, stood up, said she was going to kill herself, and ran toward the bathroom. He chased her, she shut the door, and he charged through it. The door broke and hit her in the eye. He helped her get into bed, the chair was on the bed, and it rolled over on her. Afterward, he obtained alcohol, which she had asked for, and she began drinking. Twenty minutes later, she fell down, he tried to catch her, and his hand hit her chest. He testified she had also taken some prescription pain pills and appeared as though she was passing out. After they sat on the couch for

5

awhile, she communicated with someone trying to get crack and then about a half an hour later, the police pulled in and she went to the back room and said "I'm not here." He testified that police had previously been called to the residence approximately four times, often when nothing had happened. He admitted he had been convicted of Domestic Violence before, a couple of times when he was a drug addict and could not control himself. He denied punching or kicking Oller or holding a knife to her throat on April 30.

{¶14} On cross-examination, the State inquired whether Zachery was a convicted felon, specifically for drug charges, to which he responded affirmatively. He denied being responsible for that offense. He was asked if he committed the various Domestic Violence offenses previously described. He explained that he "had to take the charge" in 2000. When asked if he disputed the 2001 conviction, he testified that he was a drug addict then. He was asked if he disputed the 2007 conviction to which he said no. As to the 2012 conviction, he stated "I had no choice but to take some of these cases." He agreed that he was the defendant in all of the domestic violence cases addressed and was convicted.

{¶15} The jury found Zachery guilty of the three charges as contained in the indictment.

{¶16} A sentencing hearing was held on October 15, 2019. The court found that Felonious Assault and Domestic Violence merged and ordered Zachery to serve a prison term of five to seven and a half years for Felonious Assault and 60 days for Resisting arrest, to run concurrently. This sentence was memorialized in a November 5, 2019 Entry on Sentence.

*State v. Zachery*, 2021-Ohio-2176, 2021 WL 2655346 (Ohio Ct. App. 2021).

## Procedural background

*Trial court proceedings*

As mentioned above, in June 2019, a Trumball County grand jury issued a three-count indictment charging Zachery with domestic violence, in violation of Ohio Revised Code § 2919.25(A) and (D)(1), (4)[1]; felonious assault, in violation of Ohio Revised Code § 2903.11(A)(2) and (D)(1)(a); and resisting arrest, in violation of Ohio Revised Code § 2921.33(A) and (D). Doc. 14-1, at 3–4. After Zachery pleaded not guilty, a jury found him guilty of all counts, the trial court merged the first two counts for sentencing, and the trial court imposed a concurrent term of five to seven-and-a-half years' imprisonment on count two and 60 days on count three. *Id*. at 7–9.

*Direct appeal*

Zachery filed a timely notice of appeal with the Ohio court of appeals. Doc. 14-1, at 12. In his supporting brief, Zachery raised eight assignments of error:

> 1. It was plain error for the trial court to allow the admission of other acts evidence which deprived appellant of a fa[i]r trial in violation of the Fourteenth Amendment of the United States Constitution and Ohio Constitution, Art. I § 1, 2, 10, and 16.
>
> 2. The state's repeated efforts to ask jurors to place themselves in the victim's shoes denied appellant a

---

[1] Subsection (A) provides that "No person shall knowingly cause or attempt to cause physical harm to a family or household member." Subsection (D)(4) makes domestic violence a third-degree felony if committed after the defendant has been convicted of two or more domestic violence offenses.

fair trial and undermined the confidence and reliability [of] the verdict in violation of the rights and liberties se[c]ured by the Sixth and Fourteenth Amendments and Ohio Constitution, Article I, § 2, 10, and 16.

3. The use of prior misdemeanor convictions for impeachment purposes is improper and undermines appellant's right to a fair trial in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Ohio Const. Art. 1, § 2, 10, and 16.

4. The failure of trial counsel to offer a stipulation regarding prior convictions that were admissible for purposes of elevating the level of offense constitutes ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution and Ohio Const. Art. I, §§ 1, 2, 10, and 16.

5. Zachery was denied due process and the effective assistance of counsel when trial counsel failed to object to prejudicial voir dire, other acts evidence and closing arguments in violation of liberties guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Ohio Constitution, Art. I, §§ 1, 2, 10, and 16.

6. The state failed to present sufficient evidence to sustain a conviction for resisting arrest or felonious assault thereby depriving appellant of the liberties secured by the Fourteenth Amendment to the United States Constitution and Ohio Const., Art. I, § 16.

7. The trial court erred when it allowed the prosecutor to question witnesses about the ultimate issue and express an opinion on the ultimate issue, whether Zachery committed the indicted offenses in violation of the liberties guaranteed by [the] Fourteenth Amendment and Article I, § 16 of the Ohio Constitution.

> 8. The cumulative effect of the errors deprived Zachery of a fair trial in violation of the rights and liberties secured by the Sixth and Fourteenth Amendments to the United States Constitution and Ohio Constitution, Art. I, § 1, 2, 16.

Doc. 14-1, at 24–28. The court of appeals affirmed on June 28, 2021. *Zachery*, 2021 WL 2655346.

In August 2021, Zachery filed a notice of appeal with the Ohio Supreme Court. Doc. 14-1, at 126. In his memorandum in support of jurisdiction, Zachery raised eight propositions of law:

> 1. Asking Jurors to Place Themselves in the Victim's Shoes Denies a Defendant a Fair Trial and Undermined the Confidence and Reliability of the Verdict.

> 2. "Golden Rule" Arguments and Tactics Undermine the Fairness and Reliability of the Proceedings, and Prejudicially Impede a Jury's Fair and Impartial Assessment of the Evidence Thereby Undermining a Defendant's Right to a Fair Trial.

> 3. Admission of Other Acts Evidence Deprives a Defendant of a Fair Trial in Violation of the Fourteenth Amendment of the United States Constitution and Ohio Constitution, Article I, §1, 2, 10 and 16.

> 4. The Use of Prior Misdemeanor Convictions for Purported Impeachment Purpose is Improper and Undermines the Defendant's Right to a Fair Trial.

> 5. The Failure of Trial Counsel to Offer a Stipulation Regarding Prior Convictions That Were Admissible for Purposes of Elevating the Level of Offense Constitutes Ineffective Assistance of Counsel in Violation of the Sixth Amendment to the United States Constitution and Ohio Const. Article I, §§ 1, 2, 10 and 16.

9

> 6. A Defendant is Denied Due Process and the Effective Assistance of Counsel, When Trial Counsel Fails to Object to Prejudicial Voir Dire, Other Acts Evidence and Closing Arguments in Violation of Liberties Guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Ohio Constitution, Article I, §§ 1, 2, 10 and 16.

> 7. Convictions Which are not Supported by Sufficient Evidence, or are Against the Manifest Weight of the Evidence, Lessen the State's Burden of Proof and Thereby Deny a Defendant the Due Process Guarantee of Conviction Only Upon Evidence of Guilt Beyond a Reasonable Doubt.

> 8. A Prosecutor Eliciting Testimony and Offering an Opinion on the Ultimate Issue for the Jury to Decide Violates the Rights and Liberties Guaranteed by Fourteenth Amendment and Article I, § 16 of the Ohio Constitution.

Doc. 14-1, at 130–31.

On October 26, 2021, the Ohio Supreme Court declined under rule 7.08(B)(4) of its rules of practice to accept jurisdiction. *Id*. at 165. Zachery did not seek review in the United States Supreme Court.

*Federal habeas proceedings*

Zachery filed a timely petition for writ of habeas corpus in early June 2022. Doc. 1, at 15; *see Houston v. Lack*, 487 U.S. 266, 270 (1988) (holding that an imprisoned petitioner's petition is deemed filed when he places it in his prison's mailing system). He raises the following grounds for relief:

> Ground one: The trial court erred when it allowed the admission of other acts of evidence which deprived the appellant of a fair trial in violation of the Fourteenth Amendment of the United States

Constitution and Ohio Constitution Art. I, § 1, 2, 10 and 16.

Ground two: The state's repeated comments which asked the juror's to place themselves in the victim's shoes denied appellant a fair trial and undermined the confidence and reliability of the verdict in violation of the rights and Liberties secured by the sixth and Fourteenth Amendments of the Ohio Constitution, Article I, § 2, 10 and 16.

Ground three: The use of prior Misdemeanor Convictions for Impeachment purposes is Improper and undermines Appellant's right to a fair trial in violation of the sixth and Fourteenth Amendments to the United States Constitution and Ohio Const. Art. I § 2, 10 and 16.

Ground four: The Failure of Trial Counsel to offer a stipulation regarding prior convictions that were admissible for purposes of elevating the level of the offense constitutes ineffective assistance of Counsel in violation of the Sixth Amendment of the United States Constitution and Ohio Const. Art. I, § 1, 2, 10 and 16.

Ground five: Zachery was denied Due Process and The Effective Assistance of Counsel when Trial Counsel failed to object to prejudicial Voir Dire, other acts of evidence and closing arguments in violation of liberties guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution and Ohio Const. Art. I, § 1, 2, 10 and 16.

Ground six: Zachery was denied Due Process and the Effective Assistance of Counsel when Trial Counsel failed to conduct any investigate or acquire existing exculpatory evidence, made known to Counsel, by the defendant, establishing the alleged victim repeatedly used the filing of false charges, filing of false claims and acts of perjury, by which she manipulated Law Enforcement, the Courts and the Ohio Welfare programs to her benefit constitutes

11

ineffective assistance of Counsel in violation of the Sixth Amendment of the United States Constitution amends. VI and XIV and Ohio Const. art. I, §10.

Ground seven: The state failed to present sufficient evidence to sustain a conviction for resisting arrest or felonious assault thereby depriving the Appellant of the Liberties Secured and Afforded by the Fourteenth Amendment of the United States Constitution and Ohio Constitution, Art. I, § 16.

Ground Eight: The Trial Court erred when it allowed the Prosecutor to question witnesses about the ultimate issue and to express opinion on the ultimate issue as to whether Zachery committed the indicted offences. This is in violation of the liberties guaranteed by the Fourteenth Amendment and Article I, §16 of the Ohio Constitution.

Ground nine: The manifest weight of the evidence as provided by the prosecution is insufficient to sustain a conviction. An examination of the new evidence as is provided by the petitioner, in this writ, challenges the manifest weight of the charges while revealing the ineffectiveness by defense counsel but also challenges the credibility of the alleged Victim.

Ground ten: The cumulative effect of the errors deprived Zachery of a fair trial in violation of the Rights and Liberties secured by the Sixth and Fourteenth Amendments to the United States Constitution and the Ohio Constitution, Article I, § 1, 2, 16.

Doc. 1, at 5–12. The Warden filed a return, Doc. 14. After being granted additional time file to file a traverse, Zachery failed to do so.

## Legal Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, § 104, 110 Stat. 1214 (AEDPA or "the 1996 Act"), habeas petitioners

must meet certain procedural requirements to have their claims reviewed in federal court. *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 430 (6th Cir. 2006). "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001). Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Failure to exhaust applies when state remedies are "still available at the time of the federal petition." *Id.* (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)). But when "state court remedies are no longer available to a petitioner because he or she failed to use them within the required time period, procedural default and not exhaustion bars federal court review." *Id.*

*Exhaustion*

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A); *Robinson v. Horton*, 950 F.3d 337, 343 (6th Cir. 2020). To exhaust his remedies, a state defendant with federal constitutional claims must "fairly presen[t]" those claims to the state courts before raising them in a federal habeas corpus action. *Robinson*, 950 F.3d at 343 (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006). A constitutional claim for relief must be presented to the state's

highest court to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845–48 (1999); *Caver v. Straub*, 349 F.3d 340, 345 (6th Cir. 2003). And a habeas petitioner must "present[] both the factual and legal basis for [the] claims to the state courts." *Hanna v. Ishee*, 694 F.3d 596, 606 (6th Cir. 2012). This means that the "'petitioner must present his claim to the state courts as a federal constitutional issue—not merely as an issue arising under state law.'" *Williams*, 460 F.3d at 806 (quoting *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984)). "'[G]eneral allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present claims" that specific constitutional rights were violated.'" *Hand v. Houk*, 871 F.3d 390, 418 (6th Cir. 2017) (quoting *Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006)).

*Procedural default*

Procedural default may occur in two ways. *Williams*, 460 F.3d at 806. First, a petitioner procedurally defaults a claim by failing "to comply with state procedural rules in presenting [the] claim to the appropriate state court." Id. In *Maupin v. Smith*, the Sixth Circuit directed courts to consider four factors when determining whether a claim is barred on habeas corpus review due to a petitioner's failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to the petitioner's claim and whether the petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal

14

constitutional claim; and (4) whether the petitioner can demonstrate cause for failing to follow the rule and actual prejudice by the alleged constitutional error. 785 F.2d 135, 138 (6th Cir. 1986); *see also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (quoting O'Sullivan, 526 U.S. at 848); *see Woolbright v. Crews*, 791 F.3d 628, 631 (6th Cir. 2015) ("When a petitioner has failed to fairly present … claims to the state courts and no state remedy remains, [the] claims are considered to be procedurally defaulted.") (citing *Gray v. Netherland*, 518 U.S. 152, 161–62 (1996)). While the exhaustion requirement is technically satisfied in this circumstance because state remedies are no longer available to the petitioner, *see Coleman v. Thompson*, 501 U.S. 722, 732 (1991), a petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review, *Williams*, 460 F.3d at 806.

To overcome a procedural bar, a petitioner must show "cause for the default and actual prejudice as a result of the alleged violation of federal law,"

or show that a "fundamental miscarriage of justice" will result if the petitioner's claims are not considered. *Coleman*, 501 U.S. at 750.

*Merits review*

If a state's courts adjudicated the merits of a claim, a habeas petitioner may obtain habeas relief under 28 U.S.C. § 2254, if the petitioner can establish one of two predicates. To establish the first predicate, the petitioner "must identify a 'clearly established' principle of 'Federal law' that" has been established by a holding of the Supreme Court. *Fields v. Jordan*, 86 F.4th 218, 231 (6th Cir. 2023) (en banc); *see* 28 U.S.C. § 2254(d)(1). The petitioner must then show that the state court's adjudication "was contrary to," or "involved an unreasonable application of" that "clearly established" precedent. 28 U.S.C. § 2254(d)(1); *see Fields*, 86 F.4th at 232.

To establish the second predicate, the petitioner must show that the state's court's adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or" based on "a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal

16

principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A]n 'unreasonable application of'" the Court's holdings is one that is "'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003)).

"[A] 'clearly established' principle of 'Federal law'" refers to the "holdings," not "dicta," of the Supreme Court's decisions. *Fields*, 86 F.4th at 231 (quoting 28 U.S.C. § 2254(d)(1) and *Woodall*, 572 U.S. at 419). A state court is not required to cite Supreme Court precedent or reflect an "awareness" of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts" such precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002); *see Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005). If the Supreme Court has not addressed the petitioner's specific claims, a reviewing district court cannot find that a state court acted contrary to, or unreasonably applied, Supreme Court precedent or clearly established federal law. *Carey v. Musladin*, 549 U.S. 70, 77 (2006); *see White*, 572 U.S. at 426 ("Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error.").

In determining whether the state court's decision involved an unreasonable application of law, the Court uses an objective standard. *Williams*, 529 U.S. at 410. "A state court's determination that a claim lacks

merit precludes federal habeas review so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011). "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

### Discussion

As is discussed below, Zachery has procedurally defaulted some of his grounds for relief. As noted above, he could overcome his default by showing "cause for the default and actual prejudice" or that a "fundamental miscarriage of justice" will result if his claims are not considered. *Coleman*, 501 U.S. at 750. Zachery, however, has not attempted to show cause, prejudice, or a fundamental miscarriage of justice. So these matters are not discussed in this report and recommendation.

*1. Ground one is procedurally defaulted*

In his first ground, Zachery argues that the trial court violated his due process rights by allowing the admission of other acts evidence. Doc. 1, at 5; *see id.* at 24–25. There are a few problems with this ground, starting with the fact that Zachery did not fairly present it to Ohio's courts as a federal constitutional claim.

18

To be sure, Zachery mentioned the Fourteenth Amendment in the caption to his argument before the court of appeals. Doc. 14-1, at 35. But a single mention of a constitutional amendment is not enough to "fairly present" a  claim "that specific constitutional rights were violated." *Hand*, 871 F.3d at 418 ("[G]eneral allegations of the denial of rights to a 'fair trial' and 'due process' do not 'fairly present claims' that specific constitutional rights were violated.") (quoting *Slaughter*, 450 F.3d at 236); *Wagner v. Smith*, 581 F.3d 410, 415–16 (6th Cir. 2009) (holding that a vague section heading that a petitioner's right to due process was violated does not satisfy "fair presentation" requirement).

Instead, Zachery's argument focused on Ohio precedent and Ohio's rules of evidence. Doc. 14-1, at 36–40; *see id.* at 139–40. Alleged state-law errors regarding the admissibility of evidence usually are not cognizable on federal habeas review. *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003); *see also Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"). Only "[w]hen an evidentiary ruling is so egregious that it results in a denial of fundamental fairness," will "it … violate due process and thus warrant habeas relief." *Bugh*, 329 F.3d at 512. Nevertheless, "state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Id.* (quoting *Seymour v. Walker*, 224 F.3d 542,

552 (6th Cir. 2000), in turn quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)).

Here, Zachery does not claim any deeply rooted principle would be offended by the admission of the evidence about which he complains. So Zachery's first ground is also not cognizable.

Further, Zachery ignored before Ohio's Supreme Court and ignores now that the court of appeals held that although the admission of some of the challenged evidence was error, Zachery suffered no prejudice. 2021 WL 2655346, at *5–7. Zachery did not challenge before the Ohio Supreme Court and does not challenge now the court of appeals' prejudice analysis. So he's forfeited any argument that the court of appeals prejudice analysis warrants relief. *Rice v. Warden, Warren Corr. Inst.*, 786 F. App'x 32, 38 (6th Cir. 2019) ("Rice … forfeited this argument by failing to raise it in his petition.").

### 2. Ground two is procedurally defaulted

In his second ground for relief, Zachery says that the prosecution repeatedly "asked the juror[]s to place themselves in the victim's shoes," thereby violating his rights under the Sixth and Fourteenth Amendments to the Ohio constitution. Doc. 1, at 6. Zachery doesn't specify what during voir dire was problematic. Instead, he points to pages of the trial transcript from voir dire. *Id*. As to this issue, the court of appeals noted that:

> the prosecutor asked the potential jurors questions such as "Let's say one time your husband puts his hands on you, maybe in a bad way * * * Would you leave him?," would a victim assume the risk if she

20

> chose to stay with an abusive individual, and
> whether, if a husband argued with a wife and
> she kept following him and would not let him walk away,
> "Then it's okay to bust her in the gums one time, I'm
> sure; right?"

*Zachery*, 2021 WL 2655346, at *8.

Zachery also points to two aspects of closing argument, saying that the prosecutor said that "holding a knife to someone's throat 'is absolutely felonious assault. Period." Doc. 1, at 6. He adds that the prosecutor also said, "But I want you to imagine, again, having this man hold a knife to your throat after he's assaulted you, after he's threatened you, after he's screaming at you, holding it (a knife) to her throat." *Id*.

As an initial matter, Zachery never raised this ground to Ohio's courts as a federal constitutional violation. Instead he explicitly relied only on provisions of Ohio's constitution and Ohio case law. *See* Doc. 14-1, at 40–43, 138–39. And the analysis in the Ohio cases on which he relied was not based on federal constitutional principles. *See Id*. at 138–39 (relying on *State v. Robinson*, 2008-Ohio-3498, 2008 WL 2700002, at *40 (Ohio Ct. App. 2008), *City of Akron v. Norman*, 2006-Ohio-769, 2006 WL 401286, at *5–6 (Ohio Ct. App. 2006), and *State v. Hart*, 2002-Ohio-1084, 2002 WL 450133, at *2–4 (Ohio Ct. App. 2002); *see also id*. at 40–43. So Zachery failed to fairly present his second ground to Ohio's courts as federal constitutional issues.

Further, under Ohio's res judicata rule, because Zachery could have raised this issue on direct appeal, it is now too late for him to raise it in Ohio's

21

courts. *State v. Szefcyk*, 671 N.E.2d 233, 235 (Ohio 1996) (reaffirming the rule from *State v. Perry*, 226 N.E.2d 104 (1967)). Ohio's courts consistently enforce this rule, *see State v. Cole*, 443 N.E.2d 169, 170–71 (1982), and the Sixth Circuit has held that Ohio's res judicata rule is an adequate and independent state ground on which to procedurally bar review of a habeas claim, *see Coleman v. Mitchell*, 268 F.3d 417, 427–32 (6th Cir. 2001); *see also Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007). So even if this Court were to construe Harris's second ground as raising an issue of constitutional magnitude, the issue is procedurally defaulted. *See Scott v. Houk*, 760 F.3d 497, 505 (6th Cir. 2014).

Moreover, Zachery raises this issue before this Court solely as a violation of Ohio's constitution. *See* Doc. 1, at 6, 25. But issues based on alleged violations of Ohio's constitution are not cognizable in a federal habeas petition. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *Cooey v. Coyle*, 289 F.3d 882, 901–02 (6th Cir. 2002)

Finally, even putting the above aside, Zachery ignores the court of appeals' resolution of this issue. As to voir dire, the court of appeals held that the prosecutor's questions were not improper because they "did not reference the specific victim or the defendant or ask the jurors to place themselves in the shoes of one of the parties in particular." *Zachery*, 2021 WL 2655346, at *8. Zachery does not claim that this determination, which he ignores, "was contrary to," or "involved an unreasonable application of" that "clearly established" precedent. 28 U.S.C. § 2254(d)(1). He also doesn't claim that this

determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). So, even putting Zachery's default aside, the aspect of Zachery's second ground that concerns voir dire fails.

As to the aspect that concerns the prosecutor's closing argument, the court of appeals held that the comment about the jurors imagining Zachery holding a knife to their throats did not prejudice Zachery in light of "the detailed evidence presented by [Zachery's victim] of the acts committed by Zachery and the specific testimony about the harm that she suffered." *Zachery*, 2021 WL 2655346, at *7. And the court of appeals held that the prosecutor's comment that holding a knife to someone's throat is "felonious assault, period" did not warrant relief. *Id*. It noted that the trial court sustained Zachery's objection, "told the jury to disregard the statement," and instructed the jury that "it's up to you to determine whether or not the defendant is going to be guilty or not guilty of these charges." *Id*. Because the jury was presumed to have followed this instruction, the court of appeals rejected Zachery's argument. *Id*.

Zachery, again, provides no basis to believe that the court of appeals determination "was contrary to," or "involved an unreasonable application of" that "clearly established" precedent. 28 U.S.C. § 2254(d)(1). He also doesn't claim that this determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in

the State court proceeding." 28 U.S.C. § 2254(d)(2). So the aspect of Zachery's second ground that concerns the prosecutor's closing argument also fails.

### 3. Ground three is procedurally defaulted

In his third ground, Zachery argues that his rights under the Sixth and Fourteenth Amendments were violated when the prosecution used his previous misdemeanor convictions to impeach him. Doc. 1, at 7. There are several problems with Zachery's third ground.

For starters, Zachery procedurally defaulted any constitutional claim related to his third ground. In his brief before the court of appeals, Zachery raised this ground purely as a question of state law. *See* Doc. 14-1, at 43–45. He neither claimed that the impeachment evidence violated the Constitution nor cited any constitutional provisions or decisions interpreting the Constitution. *See id*. at 43–45. His three-paragraph argument before the Ohio Supreme Court similarly omitted any mention of any federal constitutional provision or cases interpreting the Constitution. *See id*. at 140–41. Zachery thus failed to fairly present this issue before Ohio's courts and, given Ohio's res judicata rule, it is too late to raise it now in a post-conviction petition. *Hanna v. Ishee*, 694 F.3d 596, 613–14 (6th Cir. 2012). As a result, Zachery has procedurally defaulted this issue. *Id*. at 614; *see Williams*, 460 F.3d at 806 ("if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised on direct appeal, the claim is procedurally defaulted.").

24

Even ignoring the above default, another default stands in Zachery's path. A federal habeas court "will not consider an issue of federal law on direct review from a judgment of a state court if that judgment rests on a state-law ground that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision." *Harris v. Reed*, 489 U.S. 255, 260 (1989). "In Ohio, [the] failure to raise a contemporaneous objection to error in the trial court 'is an adequate and independent state ground to bar federal habeas review absent a showing of cause and prejudice.'" *Mason v. Brunsman*, 483 F. App'x 122, 130–31 (6th Cir. 2012) (quoting *Scott v. Mitchell*, 209 F.3d 854, 867 (6th Cir. 2000)). And an Ohio appellate court's plain-error review of an alleged error does "not constitute a waiver of the procedural default." *Id.* at 130–31; *see Williams v. Burt*, 949 F.3d 966, 973 (6th Cir. 2020) ("we have consistently held that application of the plain error standard to an unpreserved claim does not save a petitioner from a defense of procedural default raised at the habeas stage"); *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001) ("we view a state appellate court's review for plain error as the enforcement of a procedural default").

Here, the court of appeals applied and enforced the state's contemporaneous-objection rule. *See Zachery*, 2021 WL 2655346, at 8 ("We note that while defense counsel objected to certain follow-up questions, counsel did not object to the general questions regarding whether Zachery disputed the convictions so on that general point, a plain error standard applies."). Absent

25

cause and prejudice, Zachery's claim is defaulted. *Scott*, 209 F.3d at 867. But, as noted, Zachery says nothing about cause or prejudice. So the Court should reject Zachery's third ground.

> *4. Zachery's ineffective-assistance-based claims in grounds four, five, and six, fail on the merits or are procedurally defaulted.*

In his fourth, fifth, and sixth grounds, Zachery asserts that his trial counsel was ineffective for, respectively, (1) not stipulating to Zachery's prior domestic violence convictions, (2) failing to "object to prejudicial voir dire, other acts of evidence[,] and closing arguments," and (3) failing to investigate or acquire existing exculpatory evidence, made known to counsel, by the defendant, establishing that the alleged victim repeatedly used the filing of false charge, filing false claims and acts of perjury." Doc. 1, at 7–9.

A successful ineffective-assistance claim requires a petitioner to demonstrate that: (1) "counsel's performance was deficient"; and (2) "the deficient performance prejudiced the defense." *Jones v. Bradshaw*, 46 F.4th 459, 487–88 (6th Cir. 2022) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "The first prong is satisfied when a petitioner 'show[s] that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *Jones*, 46 F.4th at 487 (quoting *Strickland*, 466 U.S. at 694). "The second prong is satisfied when the petitioner 'show[s] that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* at 487–88. "'A reasonable probability is a probability sufficient to

26

undermine confidence in the outcome.'" *Id*. at 488 (quoting *Strickland*, 466 U.S. at 694). The combined effect of *Strickland* and 28 U.S.C. § 2254(d) results in "'doubly deferential'" review. *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). "When 2254(d) applies, the question is not whether counsel's actions were reasonable," but "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105; *Foust v. Houk*, 655 F.3d 524, 533–34 (6th Cir. 2011).

*Strickland* commands that a court "must indulge [the] strong presumption" that counsel "made all significant decisions in the exercise of reasonable professional judgment." 466 U.S. at 689–90; *Pinholster*, 563 U.S. at 196 ("[t]he Court of Appeals was required not simply to 'give [the] attorneys the benefit of the doubt,' but to affirmatively entertain the range of possible 'reasons Pinholster's counsel may have had for proceeding as they did'") (citation omitted). A habeas petitioner bears the burden of overcoming the "presumption that the challenged conduct might be considered sound trial strategy." *Hanna*, 694 F.3d at 612. To carry that burden, the petitioner must "show 'that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 687).

27

*In his fourth ground*, Zachery faults his trial counsel for not stipulating to his previous domestic violence convictions. Doc. 1, at 7. Here's what the court of appeals had to say about this issue:

> {¶54} To demonstrate ineffective assistance of counsel, a defendant must prove "(1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome of the proceeding." *State v. Madrigal*, 87 Ohio St.3d 378, 388-389, 721 N.E.2d 52 (2000), citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984). When evaluating the conduct of trial counsel, courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." (Citation omitted.) *State v. Wesson*, 137 Ohio St.3d 309, 2013-Ohio-4575, 999 N.E.2d 557, ¶ 81.

> {¶55} Here, there is nothing in the record to indicate that defense counsel requested or sought to stipulate to the offenses of domestic violence. As noted above, the State was required to prove two prior domestic violence convictions were committed in order to enhance the level of the domestic violence offense to a third-degree felony. R.C. 2919.25(D)(4). "[A]n offender may, and often does, stipulate to a prior conviction to avoid the evidence being presented before a jury," including in cases involving a domestic violence enhancement. *State v. Gwen*, 134 Ohio St.3d 284, 2012-Ohio-5046, 982 N.E.2d 626, ¶ 14; *State v. Taylor*, 2d Dist. Greene No. 2018-CA-9, 2019-Ohio-142, ¶ 101. Zachery emphasizes the propositions set forth in *State v. Creech*, 150 Ohio St.3d 540, 2016-Ohio-8440, 84 N.E.3d 981, and *Old Chief v. United States*, 519 U.S. 172, 117 S. Ct. 644, 136 L.Ed.2d 574 (1997), regarding the impact of stipulations in cases involving a prior conviction as an element of the offense. The Ohio Supreme Court held in Creech that, if a defendant does agree to

28

stipulate to a prior conviction, it is an abuse of discretion for the court to fail to accept such stipulation and instead admit the full record of the prior indictment when the evidence is being admitted only to prove the element of a prior conviction. *Id.* at ¶ 40. The court recognized that offering evidence of the name and nature of prior convictions, particularly in cases where the present offense could be enhanced by a variety of prior crimes as in the offense of having weapons while under disability, can create an unfair risk of prejudice. *Id.* at ¶ 39. We do emphasize that in the case of a domestic violence offense, in contrast to having weapons while under disability, the crime providing the basis for enhancement will be domestic violence rather than one of several different offenses so the "name" of the conviction is not of particular significance.

{¶56} Nonetheless, we are faced only with the question of whether failure to stipulate to prior domestic violence convictions constituted ineffective assistance of counsel.

{¶57} Courts which have addressed this issue have found there may be legitimate reasons for advising a defendant not to stipulate, such as to raise the argument that there was an error with the prior domestic violence convictions. *State v. Shaw*, 7th Dist. Belmont No. 15 BE 0065, 2017-Ohio-1259, ¶ 25; *State v. Lester*, 3d Dist. Union Nos. 14-18-21 and 14-18-22, 2020-Ohio-2988, ¶ 65 ("[i]t is a well-established principle that decisions regarding * * * stipulations are matters of trial strategy and tactics") (citations omitted). In the present matter, as the State points out, although limited questions were asked of Fenstermaker on this issue, defense counsel specifically argued in relation to the admission of exhibits that the State did not prove the convictions were for this Anthony Zachery and that the officer did not give specific information about Zachery's identifying information. "A reviewing court must not second-guess trial strategy decisions." (Citation omitted.) *State v. Tipton*, 11th

Dist. Portage No. 2012-P-0072, 2013-Ohio-3207, ¶ 31.

{¶58} We also recognize that it has been held that failure to stipulate to prior domestic violence convictions does not establish prejudice since, if the defendant had stipulated, the jury still would have learned about the fact that he had prior domestic-violence convictions. *See State v. Spaulding*, 151 Ohio St.3d 378, 2016-Ohio-8126, 89 N.E.3d 554, ¶ 153; *State v. Wood*, 2d Dist. Clark No. 2016-CA-69, 2018-Ohio-875, ¶ 51-52 (noting that the jury would have "nonetheless * * * learned of the prior convictions" regardless of the stipulation and emphasizing that the failure to stipulate "did not lead to prolonged testimony about [the defendant's] record"). Furthermore, a limiting instruction was given that prohibited the jury from considering the conviction for any purpose other than enhancement, which we must presume the jury followed. *Motley*, 2018-Ohio-3324, at ¶ 26.

{¶59} The fourth assignment of error is without merit.

*Zachery*, 2021 WL 2655346, at *8–9.

In light of *Strickland* and the deference that this Court owes to the court of appeals, Zachery's fourth ground doesn't get far. First, Zachery ignores the court of appeals' decision that not stipulating was part of counsel's strategy to question whether the previous convictions actually related to Zachery. In considering the court of appeals conclusion about counsel's decision, this Court must "affirmatively entertain the range of possible 'reasons'" for counsel's decision. *Pinholster*, 563 U.S. at 196. And Zachery must overcome the "presumption that the challenged conduct might be considered sound trial

strategy." *Hanna*, 694 F.3d at 612. But Zachery offers nothing to overcome that burden. So there is no reason to question the court of appeals' assessment.

Further it is not difficult to see why counsel would employ the strategy that he did. Zachery was charged under Ohio Revised Code § 2919.25(D)(4), which made his domestic violence offense a third-degree felony if, in relevant part, Zachery had "pleaded guilty to or been convicted of two or more offenses of domestic violence." So regardless of whether counsel stipulated, the jury was going to find out about Zachery's prior convictions. Choosing to question whether the prior conviction actually related to Zachery may have been counsel's only option.[2]

Second, Zachery ignores the court of appeals' determination that Zachery suffered no prejudice. As that court noted, (1) even if counsel "had stipulated, the jury still would have learned about the fact that he had prior domestic-violence convictions," and (2) the trial court provided "a limiting instruction … that prohibited the jury from considering the conviction for any purpose other than enhancement, which" the court appeals was bound to "presume the jury followed." *Zachery*, 2021 WL 2655346, at * 9. Zachery offers no basis to question these determinations. Indeed, no basis is apparent. The jury would have learned of the prior convictions and as a non-cognizable matter

---

[2]    Zachery appears to misunderstand that his prior convictions were not simply inquired into for impeachment purposes. Doc. 1, at 26–27. They were instead, as the court of appeal noted, matters that the prosecution had to establish for enhancement purposes. *Zachery*, 2021 WL 2655346, at *9.

of state law, the jury was presumed to have followed the judge's instruction. And because Zachery hasn't addressed his burden under 28 U.S.C. § 2254(d), there is no basis to question the court of appeals determination.

*In his fifth ground*, Zachery claims that his trial counsel was ineffective for failing to object to prejudicial voir dire, other acts … evidence[,] and closing arguments." Doc. 1, at 8. To present a successful Sixth Amendment based ineffective assistance claim, a habeas petitioner must affirmatively "show he or she was prejudiced by counsel's deficient performance." *Robins v. Fortner*, 698 F.3d 317, 329 (6th Cir. 2012); *see Strickland*, 466 U.S. at 694 (The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."). "'[S]how[ing] that the errors had some conceivable effect on the outcome of the proceeding'" is not enough to meet this burden. *Id.* (quoting *Strickland*, 466 U.S. at 693).

Here, the court of appeals rejected Zachery's fifth ground for failure to show prejudice. *Zachery*, 2021 WL 2655346, at *9–10. Among other things, Zachery must necessarily show that the court of appeals' application of *Strickland*'s prejudice "'standard was unreasonable.'" *Robins*, 698 F.3d at 329 (citation omitted). Zachery, however, ignores the court of appeals' decision, doesn't claim that it erred in finding that he did not suffer prejudice, and doesn't assert that the errors he alleges caused him prejudice. So Zachery's fifth ground fails at the threshold. *See Unger v. Bergh*, 742 F. App'x 55, 71 (6th

Cir. 2018) (holding that once the district court concluded that a habeas petitioner "failed to show … that … the state court's conclusion finding no deficient performance was an unreasonable application of Supreme Court precedent … [t]hat should have ended the inquiry"). He's forfeited (1) a challenge to the basis for the court of appeals decision; (2) any claim that his counsel's performance caused him prejudice; and (3) any claim that he could meet the requirements of 28 U.S.C. § 2254(d). The Court should thus reject Zachery's fifth ground.

*In his sixth ground*, Zachery alleges that he was denied effective assistance when his trial counsel "failed to investigate or acquire existing exculpatory evidence, made known to counsel, by the defendant, establishing that the alleged victim repeatedly used the filing of false charge, filing false claims and acts of perjury" to "manipulate[] Law Enforcement, the Courts[,] and the Ohio Welfare programs." Doc. 1, at 8.

As noted, a habeas petitioner with federal constitutional claims must "fairly presen[t]" those claims to the state courts before raising them in a federal habeas corpus action. *Robinson*, 950 F.3d at 343 (citation omitted). Although Zachery raised before Ohio's courts the factual basis for two of his ineffective-assistance based grounds for relief—grounds four and five— Zachery never presented the factual basis for third ineffective-assistance based ground for relief found in ground six. *See* Doc. 14-1, at 23–56, 129–44.

In this regard, Ohio has a "dual-track system" for raising ineffective-assistance-of-counsel claims. *See Hill v. Mitchell*, 842 F.3d 910, 936 (6th Cir. 2016). Grounds for relief that are "based on evidence wholly *within* the trial record must be brought on direct appeal." *Id*. "[C]laims based on evidence *outside* the trial record," on the other hand, "cannot be brought on direct review and must be raised in a petition for state post-conviction relief." *Id*. And if an ineffective-assistance claim "relies on evidence within the trial record" such that the claim could have been brought on direct appeal, Ohio's res judicata rule will bar post-conviction review of the claim. *Id*. "Ohio courts routinely apply the res judicata rule to" such claims. *Smith v. Bagley*, 642 F. App'x 579, 586 (6th Cir. 2016) (citing *State v. Cole*, 443 N.E.2d 169, 171 (1982)); *see Williams*, 460 F.3d at 806 ("Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised on direct appeal, the claim is procedurally defaulted.") (citing *Engle v. Issac*, 456 U.S. 107, 125 n.28 (1982)).

Zachery's claim that counsel failed to investigate necessarily rests on evidence outside the trial record. *See Buckley v. Ohio*, No. 5:19-cv-424, 2020 WL 5603768, at *8 (N.D. Ohio Aug. 18, 2020) (explaining that a claim that counsel failed to conduct an "adequate investigation," was "based in part on evidence outside the trial record"), *report and recommendation adopted*, 2020 WL 5593099 (N.D. Ohio Sept. 18, 2020). Under Ohio Revised Code § 2953.21(A)(2), any petition for post-conviction relief must be filed within 365 days of the date the trial transcript is filed with the court of appeals. Zachery's

34

record was filed on January 13, 2020. Doc. 14-1, at 173. So Zachery's time to file a petition for post-conviction relief expired in January 2021, which was before he filed his habeas petition. Any post-conviction petition that Zachery might file now would be untimely and time-barred from merits review. *See Rowe v. Buchanan*, No. 2:12-cv-141, 2012 WL 4756600, at *5 (S.D. Ohio Sept. 6, 2012), *report and recommendation adopted*, 2012 WL 4758037 (S.D. Ohio Oct. 5, 2012). As a result, Zachery's ineffective-assistance-based sixth ground for relief is procedurally defaulted. *See Awkal v. Mitchell*, 613 F.3d 629, 646 (6th Cir. 2010).

For the sake of completeness, the result would not change if Zachery's sixth ground were based on evidence within the trial record. If it were, Zachery would have been required to raise it on direct appeal. *See Hill*, 842 F.3d at 936. And because a record-based ineffective-assistance claim must be raised on direct appeal, Ohio's res judicata rule would bar Zachery from raising it now in a state post-conviction petition. *See Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007). As a result, if Zachery's sixth ground is based on the record, he has procedurally defaulted it. *Id.*; *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994) ("Rust is barred from presenting his constitutional claims to the state courts because he had the opportunity to raise the issues during the course of his direct appeal but failed to do so.").

The Court should reject Zachery's fourth, fifth, and sixth grounds for relief.

*5. Ground seven fails on the merits*

In his seventh ground, Zachery asserts that the evidence was insufficient to convict him of resisting arrest or felonious assault. Doc. 1, at 10. Zachery raised this ground as his sixth assignment of error before the court of appeals. *See* Doc. 14-1, at 27. Here's what the court of appeals had to say about this issue:

> {¶65} In his sixth assignment of error, Zachery challenges the manifest weight and the sufficiency of the evidence of the convictions for Resisting Arrest and Felonious Assault.
>
> {¶66} Sufficiency is a test of the adequacy of the evidence to determine "whether the evidence is legally sufficient to support the * * * verdict as a matter of law." (Citation omitted.) *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt," i.e., "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.
>
> {¶67} In contrast, "weight of the evidence addresses the evidence's effect of inducing belief" and warrants consideration of "whose evidence is more persuasive -- the state's or the defendant's?" *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25. An appellate court considering whether a verdict is against the manifest weight of the evidence must consider all the evidence in the record, the reasonable inferences, the credibility of the

36

witnesses, and whether, "in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶68} As to Resisting Arrest, the State was required to prove that Zachery "recklessly or by force, * * * resist[ed] or interfere[d] with a lawful arrest of the person or another." R.C. 2921.33(A).

{¶69} Zachery argues that he could not be convicted of Resisting Arrest because he was not under arrest at the time he struggled with the officers but was only being detained, noting they had not yet spoken with Oller when he was handcuffed. He further argues there was only a "slight struggle."

{¶70} This court has explained that an element of resisting arrest is a lawful arrest but that "[t]he arresting officer must only have probable cause to believe that the defendant's conduct, for which the arrest is being made, amounted to an offense." *State v. Wooden*, 11th Dist. Portage No. 2003-P-0035, 2004-Ohio-5514, ¶ 32. "Probable cause for an arrest exists if reasonable, trustworthy facts and circumstances within the arresting officer's knowledge would warrant a person to believe that the suspect had committed or was committing an offense. * * * While probable cause means more than bare suspicion, it means less than evidence which would be required to justify a conviction." *Id.* at ¶ 33. "In determining the lawfulness of an arrest, a court need not find that the elements of the underlying charge have been proven, but there must exist a 'reasonable basis' for the arrest." *State v. Thompson*, 116 Ohio App.3d 740, 743, 689 N.E.2d 86 (1st Dist. 1996).

{¶71} Here, we find there was probable cause to conduct an arrest at the time the officers informed Zachery they were detaining him and asked him to

comply with requests to handcuff him. The officers had been informed by dispatch that a 911 call had been received reporting a woman had locked herself in the bathroom and had asked her friend for help because her boyfriend was beating her. Upon responding to the location which the officers knew to be correct from the description, Zachery lied in saying his girlfriend was not there. Fenstermaker observed Oller peeking out as though she was hiding and waiving in a motion that he believed indicated she needed assistance. While we recognize that this would not have provided sufficient evidence for a conviction for domestic violence or related offenses, there was a reasonable basis to believe such crime had been committed.

{¶72} As to Zachery's argument that there was only a "slight struggle," the testimony and video showed that he repeatedly pulled away from police, would not be placed under their control, which ultimately caused them to run into the door, and would not cooperate with commands to place his hands behind his back. He cooperated only after threats that a taser would be used. We find this meets the elements of resisting arrest. *See State v. Cookingham*, 11th Dist. Ashtabula No. 2017-A-0023, 2017-Ohio-8362, ¶ 23 (resisting arrest was supported by evidence where the defendant "could not be controlled, flailed, and spun away from the officers" trying to conduct an arrest).

{¶73} To convict Zachery of Felonious Assault, it was necessary to prove that he knowingly attempted to cause physical harm to another by means of a deadly weapon or a dangerous ordnance. R.C. 2903.11(A)(2).

{¶74} Zachery argues that the evidence did not support a finding he used a deadly weapon to cause or attempt to cause harm because the alleged weapon, a knife, was not recovered, the police report had marked "no injuries" and Oller described the use of the knife as a "scare tactic." We find this conviction was supported by the evidence.

{¶75} There is no requirement to submit the weapon itself as evidence to prove the use of such weapon. Oller's testimony that a knife was used is sufficient to establish the use of such a weapon. In addition to Oller's testimony, Fenstermaker testified that he saw a cut on her neck that could be from a knife or something used to choke her. While Fenstermaker did confirm that the domestic violence checklist he completed had a marking that there were "no injuries," he explained it was possible he checked the wrong box. Nonetheless, there was clear testimony of injuries as well as an attempt of harm with a deadly weapon, which meets the requirements of R.C 2903.11(A)(2).

{¶76} Finally, Zachery argues that there was not an attempt to cause harm with the knife because Oller testified he did not "push" the knife against her throat and that she believed it was a "scare tactic." However, she further explained that she did not know if he was going to slit her throat and she was "hoping he wasn't going to follow through." The fact that Zachery held a knife against her throat, possibly leading to the cut, scaring her enough to flee to the bathroom, combined with other evidence such as text messages showing she had been in fear for her life and Fenstermaker's testimony that she had stated Zachery threatened to kill her with the knife, supports a determination of an attempt to cause harm.

{¶77} The sixth assignment of error is without merit.

*Zachery*, 2021 WL 2655346, at *10–11.

When reviewing a claim that a petitioner's conviction is not supported by sufficient evidence, this Court asks "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*

39

*v. Virginia*, 443 U.S. 307, 319 (1979). This "standard 'gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc) (quoting *Jackson*, 443 U.S. at 319). In applying the standard, the court defers to the trier-of-fact's determination. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). The court does "not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the [fact-finder]." *Id.*; *see also Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003). "Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence to exclude every reasonable hypothesis except that of guilt." *Johnson v. Coyle*, 200 F.3d 987, 992 (6th Cir. 2000) (internal quotations and citations omitted); *see also Durr*, 487 F.3d at 449 ("circumstantial evidence is entitled to equal weight as direct evidence").

On federal habeas review, an additional layer of deference applies. *Brown*, 567 F.3d at 205; *see Coleman v. Johnson*, 566 U.S. 650, 651 (2012). First, the Court defers "to the trier-of-fact's verdict, as contemplated by *Jackson*." *Davis*, 658 F.3d at 531. And second, the Court defers under the 1996 Act to the state courts' "consideration of the trier-of-fact's verdict." *Id.* So even if this Court would conclude in the first instance that a rational trier-of-fact could not have found Zachery guilty beyond a reasonable doubt, the Court "must still defer to the state appellate court's sufficiency determination as long

as it is not unreasonable." *Brown*, 567 F.3d at 205; *see also White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009). This doubly deferential "standard erects 'a nearly insurmountable hurdle' for petitioners who … seek habeas relief on sufficiency-of-the-evidence grounds." *Keys v. Booker*, 798 F.3d 442, 450 (6th Cir. 2015) (quoting *Davis*, 658 F.3d at 534)).

With this background in mind, Zachery offers the following about his sufficiency argument:

> The allegation that a knife was used against in the Oller was used for the charge of felonious assault despite the fact that no knife was found, seized, photographed or entered into evidence. One officer testified that he "believed a knife was involved" but did not even "recall anything about the knife allegation ... "(Tr. Vol. II, p.229.) The other officer that actually completed the DV incident report had checked "no injuries." (Tr. Vol. I, p.195.) Viewing the evidence in the light most favorable to the State, there was insufficient evidence to sustain the conviction for felonious assault.

Doc. 1, at 10.

As an initial matter, although Zachery says that this ground partly concerns his resisting arrest conviction, he offers nothing about that conviction. And although the Court is obligated to construe Zachery's pro se filing liberally, the Court is not also obligated to create arguments out of whole cloth. *See Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004). So Zachery has forfeited any argument that the evidence was insufficient to convict him of resisting arrest.

As to felonious assault, Zachery again ignores the court of appeals decision. It explained that nothing in Ohio law requires that the prosecution offer the weapon that was used and, further, that the testimony of Zachery's victim alone was enough to show that he used a weapon. *Zachery*, 2021 WL 2655346, at *11. Additionally, one of the officers testified "that he saw a cut on [the victim's] neck that could be from a knife or something used to choke her." *Id*. And he further explained that "it was possible he checked the wrong box" on a domestic violence checklist that he completed." *Id*. Finally, and in any event, "there was clear testimony of injuries as well as an attempt of harm with a deadly weapon, which meets the requirements of" the statute of conviction. *Id*.

Zachery offers nothing to counter these determinations. He doesn't mention the court of appeals decision and instead simply repeats the arguments that he presented to the court of appeals, which the court of appeals addressed and rejected. Zachery has offered no argument about whether or how the court of appeals erred, let alone why this Court should not defer to the court of appeals' resolution of this issue. The Court should reject Zachery's seventh ground.

### 6. Ground eight is procedurally defaulted

In his eighth ground, Zachery claims that the trial court violated his rights under the Fourteenth Amendment when "it allowed the Prosecutor to question witnesses about the ultimate issue and to express opinion on the

ultimate issue as to whether Zachery committed the indicted offences." Doc. 1, at 10. As support for this argument, Zachery points to two events. First, he notes that, without objection, "[t]he prosecutor asked [a] police officer if based on his training and experience did Zachery resist arrest … and the officer said, 'yes.'" *Id*. at 11 (citing Tr. Vol. II, p. 220)). Second, he references the prosecutor's statement during closing argument "that placing a knife to someone's throat is 'felonious assault. Period.'" *Id*. He notes that the trial court denied a motion for a mistrial based on this comment. *Id*.

Zachery procedurally defaulted any constitutional claim related to his eighth ground. In his brief before the court of appeals, Zachery raised this ground purely as a question of state law. *See* Doc. 14-1, at 52–53. His two-paragraph argument to the court of appeals neither claimed that the prosecutor's question or statement violated the Constitution nor cited any constitutional provisions or decisions interpreting the Constitution.[3] *See id*. at 52–53. His one-paragraph argument before the Ohio Supreme Court didn't even rely on Ohio precedent, let alone any United States Supreme Court decision. *See id*. at 144. Zachery thus failed to fairly present this issue before Ohio's courts. Given Ohio's res judicata rule, it is too late to raise it now in a

---

[3] Zachery vaguely referenced the Fourteenth Amendment in the heading to this issue before the court of appeals. *See* Doc. 14-1, at 52. But that general reference is not enough to fairly present a constitutional issue. *See Wagner*, 581 F.3d at 415–16 (holding that vague section headings that a petitioner's right to due process was violated did not satisfy "fair presentation" requirement).

post-conviction petition. *Hanna*, 694 F.3d at 613–14. As a result, Zachery has

procedurally defaulted this issue. *Id*. at 614; *see Williams*, 460 F.3d at 806.

The Court should reject Zachery's eighth ground.

*7. Ground nine is not cognizable*

In his ninth ground, Zachery asserts:

> The manifest weight of the evidence as provided by
> the prosecution is insufficient to sustain a
> conviction. An examination of the new evidence as is
> provided by the petitioner, in this writ, challenges
> the manifest weight of the charges while revealing
> the ineffectiveness by defense counsel but also
> challenges the credibility of the alleged Victim.

Doc. 1, at 11. In an attachment to his petition, he invites the court to examine

new evidence, "review the entire record, weigh the evidence and all reasonable

inferences, consider the credibility of witnesses and determine whether, in

resolving conflicts in the evidence." *Id*. at 30.

As framed by Zachery, his ninth ground is not cognizable. A manifest-

weight-of-the-evidence claim presents an issue of state law. When an Ohio

appellate court reviews a manifest-weight claim, it:

> review[s] the entire record, weighs the evidence and
> all reasonable inferences, considers the credibility of
> witnesses and determines whether in resolving
> conflicts in the evidence, the jury clearly lost its way
> and created such a manifest miscarriage of justice
> that the conviction must be reversed and a new trial
> ordered.

*State v. Scott*, 800 N.E.2d 1133, 1140 (Ohio 2004) (citation omitted). Under

Ohio law, "[w]hen a court of appeals reverses a judgment of a trial court on the

44

basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *State v. Thompson*, 678 N.E.2d 541, 546–47 (Ohio 1997) (citations omitted). A federal habeas court, however, can't "reweigh the evidence or re-determine the credibility of the witnesses whose demeanor has been observed by the trial court" because, in habeas proceedings, "[i]t is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony." *Matthews*, 319 F.3d at 788 (citations omitted). Manifest-weight-of-the-evidence claims are thus not cognizable in federal habeas proceedings. *See Johnson v. Havener*, 534 F.2d 1232, 1234 (6th Cir. 1976).

The Sixth Circuit has held, however, that a manifest-weight-of-the-evidence claim presented on direct review to an Ohio court of appeals is sufficient to preserve an insufficient evidence argument. *Nash v. Eberlin*, 258 F. App'x. 761, 765 (6th Cir. 2007). In theory, because Zachery raised his manifest-weight claim before the court of appeals and the Ohio Supreme Court, *see* Doc. 14-1, at 49–52, 142–44, he's preserved a sufficiency challenge. But he raised his manifest-weight challenge as part of his sufficiency challenge to his assault and resisting convictions. *Id*. at 49–52. Zachery's sufficiency challenge has been discussed above in relation to ground seven, however. So, to the extent this ground presents a sufficiency challenge, it is duplicative of ground

seven.[4] To the extent it raises a stand-alone manifest-weight challenge, it is not cognizable. Either way, the Court should reject ground nine.

### 8. Ground ten is not cognizable

In his tenth ground, Zachery asserts that the cumulative effect of the errors that he has alleged violated his rights under the Sixth and Fourteenth Amendments. Doc. 1, at 12. But, as the Warden notes, Doc. 14, at 86, cumulative error claims are not cognizable in a federal habeas petition, *see Williams*, 460 F.3d at 816. So the Court should reject Zachery's ten ground.

### Conclusion

For all of the above reasons, the Court should dismiss Zachery's petition.

Dated: May 21, 2024

*/s/ James E. Grimes Jr.*
James E. Grimes Jr.
U.S. Magistrate Judge

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).

---

[4] Zachery does not explain the charges to which this ground pertains. But he only preserved an issue as to his assault and resisting convictions. *See* Doc. 14-1, at 49–52, 142–44. So this ground is duplicative of ground seven.